The Louisville, Evansville and St. Louis, etc., Railroad Co. *v.* Wilson *et al.*

No. 15,887.

THE LOUISVILLE, EVANSVILLE AND ST. LOUIS CONSOL-
IDATED RAILROAD COMPANY *v.* WILSON ET AL.

COMMON CARRIER.—*Overcharge of Freight.— Voluntary Payment.*—The pay-
ment of an overcharge of freight to a railroad company engaged as a
common carrier of goods is not a voluntary payment within the ordi-
nary meaning of that term, and a shipper has the right to sue upon
his contract and recover back the excess of freight paid over the con-
tract rate.

SAME.—*Complaint.—Averment as to Payment of Excess.*—Where in an action
to recover excess of freight the complaint charged that the excess so
charged and received by the defendant was $2,800, but it did not ap-
pear by affirmative allegation that it was paid by the plaintiffs, the
inference will be indulged that it was, as they were the shippers, and
the complaint will be good as against a demurrer.

SAME.— *Unjust Discrimination Against Shipper. — Instruction to Jury. —* In
such an action, where the evidence showed that for some years prior to
the 1st of January, 1887, the plaintiffs and several other parties had been
engaged in the business of purchasing and shipping railroad ties over the
defendant's road from the stations named in the complaint to the city of
Evansville, and that prior to that date a uniform rate of freight per car
load of two hundred ties was charged, and that after that date the de-
fendant raised the freight rate ten dollars per car on all shippers ex-
cept one D., an instruction was proper which informed the jury that if
during several months of the year 1887 the plaintiffs shipped a large
number of cross-ties in the usual manner over the defendant's road, and
during the same time D. shipped a greater number of car-loads under
special contract, which, in addition to the contract of assignment con-
tained other stipulations of advantage to the defendant, the nat-
ural and necessary effect of the transaction, considered in detail and
altogether, was a substantial discrimination in favor of D., against the
plaintiffs, whereby the plaintiffs were made to pay the defendant many
hundred dollars in excess of that paid by D. for similar services, and
in excess of the value of all that was done or furnished or to be done
or furnished by him under the special contract, and the plaintiffs, upon
making a demand would be entitled to recover for the excess of freight
so paid by them.

SAME.— *When Right to Discriminate Inapplicable.*—Where the commodity
shipped for D. and the commodity shipped for the plaintiffs was the
same, and all was shipped in full car-loads and from the same stations,
the rule does not apply which permits a carrier to discriminate in favor
of a shipper who transports large quantities of a given commodity in
one parcel at a time as against a shipper who transports the same com-

# 518    SUPREME COURT OF INDIANA,

modity in small quantities in broken packages. Neither does the rule apply which permits the common carrier to discriminate in favor of one class of goods over others of a different class.

SAME.—*Shipment of Larger Number of Car-Loads.*—*No Basis for Discrimination.*—The fact that D. was able to furnish a larger number of car-loads of ties than the plaintiffs would not justify a discrimination in his favor over the rates charged to the plaintiff. As to whether the fact that D. agreed to furnish the defendant such ties as it desired for its own use at a given price relieved the discrimination of its objectionable feature, by which it became a reasonable discrimination, was a question of fact which was properly submitted to the jury for its determination.

SAME.—*Establishment of Discriminating Rates for Railroad's Advantage.*—A carrier can not rightfully establish rates in order to keep on the line material for which it has use, or to keep the price low for its own advantage, producers being entitled to sell where they wish and in the most available market.

SAME.—*When Discrimination Unjust.*—*Consideration.*—If the contract was of such a character as to destroy the business of the plaintiffs by reason of the discrimination in favor of D., and thus enable D. to acquire a monopoly of the business of purchasing and shipping cross-ties over defendant's road, the discrimination was unjust without regard to the consideration upon which it was based.

SAME.—*Instruction to Jury.*—An instruction was properly refused which excluded from the consideration of the jury the question as to whether there had been an unjust discrimination made by the defendant in favor of D., whereby the plaintiff had been damaged.

From the Vanderburgh Superior Court.

*A. P. Humphrey, A. Gilchrist* and *C. A. De Bruler,* for appellant.

*W. Hamill, J. S. Buchanan* and *C. Buchanan,* for appellees.

COFFEY, J.—This case is here for the second time. See *Louisville, etc., R. R. Co.* v. *Wilson,* 119 Ind. 352.

Upon a return of the case to the court below, the appellees filed an amended complaint consisting of seven paragraphs. There was a verdict against the appellees on the first, second and third paragraphs of the complaint, so they need no further notice. The appellant contends that the superior court erred—

*First.* In overruling its demurrer to the fifth, sixth and seventh paragraphs of the complaint.

*Second.* In overruling its motion for a new trial.

The fifth paragraph of the complaint alleges, substantially, that the appellees, as partners, were engaged in the business of purchasing and shipping railroad ties; that the appellant owned and operated a railroad running by and through the stations and towns of Tennyson, Chandler, Gentryville and Ferdinand, in Indiana; that there was no other railroad through or near these places for the transportation of freight; that after the construction of the appellant's road the appellees engaged in the business of purchasing railroad crossties and shipping the same from the above-named stations to the city of Evansville; that the regular and reasonable charge and tariff rate of freight for cross-ties from those stations to the city of Evansville was fourteen dollars per car, and that such price had been charged from the date of the construction of the road until the 1st day of January, 1887, and that such price and rate of freight is still the amount charged for the shipment of cross-ties from these stations to Evansville; that such sum was the full and reasonable charge for such freights, and was and has been so recognized by the appellant; that prior to the 1st day of January, 1887, there were several parties engaged in the purchase and shipment of cross-ties from said stations; that after the 1st day of January, 1887, the appellant wrongfully and unjustly charged as freight for cars loaded with cross-ties the sum of twenty-four dollars for each car from said stations to the city of Evansville; that such charge was unreasonable and excessive, and destructive of the business of the appellees; that at the time such increased rate of freight was charged by the appellant, appellees had at said stations and along the line of said road 100,000 cross-ties which had cost them twenty-five thousand dollars; that said ties could not be shipped by any other railroad, as appellant knew; that the appellees had contracted for the sale of the ties and were compelled to fill and

complete such contract; that they were unable to purchase ties at any other place to fill the same, and were compelled to ship the same over the appellant's road; that the appellant collected from the consignees of said ties the sum of twenty-four dollars freight on each car so shipped by the appellees from said stations to the city of Evansville; that they shipped three hundred and fifty-four cars of said ties between the 1st day of January, 1887, and the 1st day of August of that year from the above named stations to the city of Evansville to' fill their contract and dispose of such cross-ties; that the excess of freight so charged and received by the appellant was twenty-eight hundred dollars; that at the same time the appellant was so charging the appellees the sum of twenty-four dollars per car it was charging other parties for similar shipments the sum of fourteen dollars only; that before the commencement of this suit the appellees demanded of the appellant said sum of twenty-eight hundred dollars, which it refused to pay, and thereupon they demanded of the appellant twenty-eight hundred dollars damages, which it refused to pay.

The sixth paragraph of the complaint is similar to the fifth, except that it contains the further allegations that the appellant entered into a contract with one Dickason, whereby Dickason was permitted to ship cross-ties over the appellant's road at fourteen dollars per car-load, each load containing two hundred ties, while it charged the appellees and all others the sum of twenty-four dollars per car for like shipments; that the contract with Dickason was made for the purpose of giving him a monopoly of the business of purchasing and shipping cross-ties on the line of the appellant's road; that by reason of such unjust discrimination the business of the appellees was destroyed, to their damage in the sum of twenty-eight hundred dollars.

The seventh paragraph is substantially the same as the fifth, except that it contains the further allegation that it received receipts from the appellants for the cross-ties ship-

ped, which the appellants called bills of lading, but which the appellees refused to accept as such, but did receive them as receipts for ties shipped.

It is claimed by the appellant that the court erred in overruling the demurrer to the fifth and seventh paragraphs of the complaint because it appears from each of these paragraphs that the payments therein set forth were voluntary payments. It is said by counsel, in their brief, that no kind of extortion is shown, no pretence that the appellant refused to carry the cross-ties or refused to deliver them unless the rates charged were paid; nor is there any claim that the appellees were ignorant of the facts stated in these paragraphs at the time the freight was paid.

On the other hand, it is contended by the appellees that payments made to a railroad company, or other common carrier, for overcharges for carrying freight are not voluntary payments, for the reason that the shipper and carrier do not stand upon an equality.

The only authorities cited by the appellant holding that payment without protest to a common carrier for an overcharge is a voluntary payment are the cases of *Evershed* v. *London, etc., R. W. Co.*, L. R. 3 Q. B. 134, and *DuBose* v. *Georgia, etc., R. R. Co.*, 50 Ga. 304.

We are of the opinion, however, that the decided weight of authority is that the payment of an overcharge of freight to a railroad company engaged as the common carrier of goods is not a voluntary payment within the ordinary meaning of that term.

In the case of *Heiserman* v. *Burlington, etc., R. W. Co.*, 16 American and English Railroad Cases, 46, which was an action to recover for overpayment of freights, the court said: "Nor need the plaintiff, in a case brought to enforce such obligation, show objection or protest prior to the payment made in excess of reasonable compensation. These rules are founded upon the consideration that railroad companies are public carriers, and those who employ them are in their

power and must bow to the rod of authority which they hold over consignors and consignees of property transported by them. * * * The law does not require objection or protest to the payment of unjust charges for the reason that they would be vain, being addressed to those who occupy the commanding position of power to enforce obedience to their requirements. For another reason, they are not required. Those who do business with the railroads never come in contact with the officers who possess authority to fix or abate rates of charges; indeed, they usually hardly know their names or where to find them. * * * These considerations take the case from the operation of the familiar rule which forbids recovery on account of payments voluntarily made without objection or protest."

In the case of *Chicago, etc., R. R. Co.* v. *C. V. & W. Coal Co.*, 79 Ill. 121, it was said by the Supreme Court of Illinois: " In such a case, where the coal company has no other outlet for its coal, and the railroad company exacts more freight than, by the terms of the contract, they are entitled to, the coal company should be considered as under a kind of moral duress, and the payment by them of the freight demanded, under such circumstances, is not to be considered voluntary, and they would have the right to sue upon the contract, and recover back the excess of freight paid over the contract rate."

In the case of *Mobile, etc., R. W. Co.* v. *Stiner*, 61 Ala. 559, which was an action to recover for over-payment of freights on the transportation of cotton, the court said: " The nature of the business considered, the shipper does not stand on equal terms with the carrier in contracting for charges for transportation, and if the shipper pays the rates established in violation of law by the carrier, rather than forego his services, such payment is not voluntary in the legal sense, and the shipper may maintain his action for money had and received to recover back the illegal charges." Indeed there seems to be but little conflict in the authorities

in this country holding that the payment to a railroad company engaged in the business of common carrier of an overcharge of freight for goods transported over the road of such company, is not a voluntary payment as the law interprets that term. *Peters, Ricket & Co.* v. *Marietta, etc., R. R. Co.*, 18 Am. & Eng. R. R. Cases, 492; *Parker* v. *Great Western R. W. Co.*, 49 M. & G. 253; Addison Con., 1043; *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Beckwith* v. *Frisbie*, 32 Vt. 559; *West Virginia, etc., Co.* v. *Sweetzer*, 25 W. Va. 434; *Lafayette, etc., R. R. Co.* v. *Pattison*, 41 Ind. 312.

In the case of *Lafayette, etc., R. R. Co.* v. *Pattison, supra,* which was an action to recover back an excessive payment of freight made under an agreement that such payment should not be regarded as voluntary, this court said: "In the second place, we are of the opinion that money so paid could be recovered back if there had been no valid agreement that it might be. While the appellants were not in the actual possession of the cattle of appellee, they possessed such power and control over the shipments and delivering thereof as gave them an undue advantage over the appellees, and the necessity of the appellee was so great as to deprive him of the freedom of his will."

Under these authorities we are constrained to hold that the payments which appellees in this case are seeking to recover from the appellant are not to be regarded as voluntary payments, and for that reason the complaint is not subject to the objection here urged against it.

The appellant is in error in its contention that it does not appear by the allegations found in the sixth paragraph of the complaint, that any excessive freight was paid. It is alleged that the excess of freight so charged and received by the appellant was $2,800. It is true that it does not appear by affirmative allegation that it was paid by the appellees, but as they were the shippers, we think such an inference should be made. This paragraph was, perhaps, subject to a motion

to make it more specific, but such a defect is not reached by demurrer.

In our opinion the court did not err in overruling the demurrer of the appellant to either the fifth, sixth or seventh paragraphs of the complaint.

Under the second assignment of error it is contended by the appellant that the court erred in giving to the jury certain instructions asked by the appellees, in giving a certain instruction to the jury on its own motion, and in refusing to give certain instructions which, at the proper time, it asked the court to give to the jury.

As instructions must be pertinent to the case made by the evidence in the cause, it is proper to state the case now before us as it is made by the evidence introduced by the parties on the trial of the cause, before we examine the instructions given and refused.

It appears from the proofs in the case that the appellant's road runs for some considerable distance through a heavily timbered country. For some years prior to the 1st day of January, 1887, the appellees and several other parties had been engaged in the business of purchasing and shipping railroad ties over the appellant's road from the stations named in the complaint to the city of Evansville. Prior to that date the uniform rate of freight from these stations to the city of Evansville was fourteen dollars per car load of two hundred ties. In the fall and early winter of 1886 the appellees had purchased and had piled up on the appellant's road, at the stations named, a large number of railroad ties which they could ship in no way except over the road operated by the appellant. On the 1st day of January, 1887, the appellant raised the price of freight on railroad ties from said stations to the city of Evansville from fourteen to twenty-four dollars per car on all shippers except one Dickason. The appellant entered into a contract with Dickason, by the terms of which he was permitted to ship ties from these stations at the price of fourteen dollars per car in consideration that he

would ship over the road five hundred cars per month, and would sell it such ties as it needed at twenty-five cents each. The evidence tends to prove that the price of ties on this road was twenty-six cents at the time the contract was made. After the freight was so raised the appellees shipped the ties they then had on hand over the appellant's road, amounting to about three hundred and fifty-three cars, upon which the appellant collected from the consignees twenty-four dollars per car, which was deducted by the consignees from the agreed price to be paid for the ties, on settlement with the appellees. The result of the discrimination in favor of Dickason was to drive the appellees and other dealers in ties off the appellant's road, and thus give Dickason a monopoly of the business of purchasing and shipping ties.

Upon these facts the court of its own motion, as well as at the request of the appellees, instructed the jury, substantially, that if during seven months of the year 1887 the appellees shipped three hundred and fifty-three car-loads of cross-ties, in the usual manner, over the appellant's railroad, and during the same time Dickason shipped a greater number of car-loads under a special contract, which, in addition to the contract of assignment, contained other stipulations of advantage to the appellant; that the natural and necessary effect of these transactions, considered in detail and altogether, was a substantial discrimination in favor of Dickason and against the appellees, whereby the appellees were made to pay to the appellant many hundred dollars in excess of that paid by Dickason for similar services, and in excess of the value of all that was done or furnished or to be done or furnished by him under the special contract, then the appellees, upon making a demand, would be entitled to recover for the excess of freight so paid by them.

If any objection at all can be urged against these instructions it is, we think, that they are, under the facts in this case, too favorable to the appellant.

It is not true that a railroad company, engaged in the

business of a common carrier, possesses the same liberty to make contracts for its profit in carrying freight or passengers that a private person engaged in a private business possesses in making contracts in relation to private affairs.

Railroad companies are granted charters and are given the right of eminent domain because when the roads are constructed, though owned by the corporation, they are nevertheless for public use, and are, in a qualified sense, public highways. Every one constituting a part of the public, for whose use they are constructed, is entitled to an equal and impartial participation in the use of the facilities for transportation which they afford. While power to fix rates is conferred upon them by law, such rates are always open to investigation by the courts, for it is an elementary rule that common carriers can charge no more than a reasonable compensation for the services performed.

While it is true that there is apparently some conflict in the authorities, the principles here announced, we think, are supported by the weight of authority. *Root* v. *Long Island R. R. Co.*, 114 N. Y. 300; *Express Co.* v. *Main Central R. W. Co.*, 57 Me. 188; *Scofield* v. *Lake Shore, etc., R. W. Co.*, 43 Ohio St. 617; *Sandford* v. *Railroad Co.*, 24 Pa. St. 378; *Hays* v. *Pennsylvania Co.*, 12 Fed. Rep. 309; *Attorney General* v. *Railway Co.*, 35 Wis. 425; *Samuels* v. *Louisville, etc., R. R. Co.*, 31 Fed. Rep. 57; *Providence Coal Co.* v. *Providence, etc., R. R. Co.*, 1 Inter-State Commerce Rep. 107.

A writer on railway law thus expresses the general rule: "Railways are held to the strictest impartiality in the conduct of their business in withholding all privileges or preferences from one customer which are not extended to all others." 1 Woods Railway Law, 565.

Of course there are some exceptions to the general rule, and we are not unmindful of the rule which permits a common carrier to discriminate in favor of a shipper who transports large quantities of a given commodity in one parcel at

a time as against a shipper who transports the same commodity in small quantities in broken packages. Such discrimination is rendered necessary by the increased expense of handling, storing and caring for the smaller quantities, and is not unreasonable. Nor have we overlooked the rule which permits the common carrier to discriminate in favor of one class of goods over others of a different class. These rules constitute an exception to the general rule, but in our opinion they have no application here. In this case the commodity shipped for Dickason and the commodity shipped for the appellees was the same. All was shipped in full car loads and from the same stations. It is difficult to perceive how it is possible that it should cost more to ship a car load of cross-ties for the appellees than to ship a car load for Dickason. It is plain, therefore, we think, that discrimination of ten dollars on the car was unreasonable unless there was something in the special contract between the appellant and Dickason which rendered such discrimination reasonable.

It is contended by appellant that in view of the fact it secured by its contract with Dickason a certain income of $7,000 per month that it could as well afford to carry ties for him at $14 per car as to carry them for the appellees at $24 per car.

We find it unnecessary to enquire whether the appellant is correct or otherwise in this contention, for as we understand the law a railroad company, engaged in the business of a common carrier, is not permitted by the law to discriminate in favor of a shipper who is able to furnish a large amount of freight over one engaged in the same business who is unable to furnish the same quantity as that shipped by his more opulent rival. The reasons for prohibiting such discrimination are well stated in the case of *Hays* v. *Pennsylvania Co., supra.* In that case it was said: " The discrimination complained of rested exclusively on the amount of freight supplied by the respective shippers during

the year.  Ought a discrimination resting exclusively on such a basis to be sustained?  If so, then the business of the country is, in some degree, subject to the will of railroad officials; for if one man engaged in mining coal, and dependent on the same railroad for transportation to the same market, can obtain transportation thereof at from twenty-five to fifty cents per ton less than another competing with him in business, solely on the ground that he is able to furnish, and does furnish, the larger quantity for shipment, the small operator will sooner or later be forced to abandon the unequal contest and surrender to his more opulent rival.  If the principle is sound in its application to rival parties engaged in mining coal, it is equally applicable to merchants, manufacturers and millers, dealers in lumber and grain and to everybody else interested in any business requiring any considerable amount of transportation by rail; and it follows that the success of all such enterprises would depend as much on the favor of the railroad officials as upon the energies and capacities of the parties prosecuting the same.  *  *  *  The men who control railroads would be quick to appreciate the power with which such a holding would invest them, and it may be, not slow to make the most of their opportunities, and perhaps tempted to favor their friends to the detriment of their personal or political opponents; or demand a division of the profits realized from such collateral pursuits as could be favored or depressed by discriminations for or against them; or else, seeing the augmented power of capital, organize into overshadowing combinations and extinguish all petty competition, monopolize business, and dictate the price of coal and every other commodity to the consumers."

In our opinion the fact that Dickason was able to furnish a larger number of car loads of ties for shipment than the appellees could constitute no sufficient reason for a discrimination in his favor over the rates charged to the appellees.

As to whether the fact that Dickason agreed to furnish the

appellant such ties as it desired for its own use at a given price, relieved the discrimination of its objectionable features by which it became a reasonable discrimination, was a question of fact, which was properly submitted to the jury for its determination.

The court, at the request of the appellees, instructed the jury, in substance, that a carrier can not rightfully establish rates in order to keep on its line material for which it has use, or to keep the price low for its own advantage; that the producers are entitled to sell it when they wish and in the most available market. Common carriers are forbidden to attempt this by applying disproportionate or unreasonable rates.

It is contended by the appellant that there was no evidence in the cause to which this instruction could apply, but we think otherwise. The fact that the appellant made a contract with Dickason for cross-ties, to be used by it, at less than the selling price, and then discriminated against all other dealers in such a manner as to drive them from its road authorized the inference that one object in view was to keep the ties it desired to use upon its line and to keep down the price.

We think the instruction stated the law correctly, and that it was applicable to the evidence in the cause. *Reynolds* v. *Western, etc., R. W. Co.*, 1 Interstate Com. Rep. 347.

We are of the opinion that there is no error in the instructions given by the court of which the appellant has the right to complain.

Instruction number three, asked by the appellant and refused by the court, was vicious, in that it was calculated to create the impression upon the minds of the jury that the contract between the appellant and Dickason did not amount to an unjust discrimination if it was based upon an adequate consideration.

If the contract was of such a character as to destroy the business of the appellees by reason of the discrimination in

favor of Dickason, and thus enable Dickason to acquire a monopoly of the business of purchasing and shipping cross-ties on appellant's road, the discrimination was unjust, without regard to the consideration upon which it was based. *Chicago, etc., R. R. Co.* v. *People, ex rel.,* 67 Ill. 11; *People, ex rel.,* v. *Chicago, etc., R. R. Co.,* 55 Ill. 111; *Chicago, etc., R. W. Co.* v. *People, ex rel.,* 56 Ill. 365; *Garton* v. *Bristol, etc., R. W.* 95 Eng. Com. Law, 641; *Crouch* v. *London, etc., R. W. Co.,* 78 Eng. Com. Law, 254; *Sandford* v. *Railroad Co.,* 24 Pa. St. 382; *Chicago, etc., R. R. Co.* v. *Thompson,* 19 Ill. 577; *Western Transportation Co.* v. *Newhall,* 24 Ill. 466.

There was no evidence in the record to which the fourth instruction asked by the appellant was applicable, and for that reason it was properly excluded.

The sixth instruction asked by the appellant and refused by the court was defective, in that it excluded from the consideration of the jury the question as to whether there had been an unjust discrimination made by the appellant in favor of Dickason, whereby the appellees had been damaged.

In our opinion there is no error in the record for which the judgment in this case should be reversed.

Judgment affirmed.

Filed Oct. 27, 1892.