AMERICAN TIE & TIMBER CO., Limited, v. KANSAS CITY SOUTHERN RY. CO. et al. †

(Circuit Court of Appeals, Fifth Circuit. December 28, 1909.)

No. 2,013.

1. CARRIERS (§ 36*)—INTERSTATE COMMERCE—DISCRIMINATION.

Refusal of an interstate carrier to furnish cars for the shipment of complainant's cross-ties, while furnishing cars to others for interstate shipment of other freight, constitutes an unjust discrimination in violation of Interstate Commerce Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155), for which plaintiff was entitled to recover full damages with an attorney's fee and costs as authorized by section 8.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 36.*]

2. CARRIERS (§ 32*)—INTERSTATE COMMERCE—JOINT RATES—"LUMBER."

When plaintiff applied for cars for the transportation of oak cross-ties, one of defendant carriers had a joint rate to Kansas points, including the destination of the ties, applying to "lumber, car loads, all kinds," of 24 cents per 100 pounds. The other defendant carrier had a similar rate on "lumber, all kinds," but neither carrier had a specific rate on cross-ties. Held, that "lumber" being generally defined to include "any timber sawed or split for use," whether by maul, wedge, or the use of machinery in a mill, anything manufactured out of a log with saw, ax, maul, wedge, or machine, for building houses, bridges, fences, or railroads, after the product leaves the log for commercial use, it included the cross-ties within such joint-rate schedules.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 5, pp. 4257, 4258; vol. 8, p. 7711.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied February 1, 1910.

3. CARRIERS (§ 32*)—RATES—DISCRIMINATION.

Classification of railway cross-ties in a different class from "lumber," imposing on them a higher rate, constitutes unjust discrimination.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*

What constitutes an unlawful discrimination by a carrier under interstate commerce regulations, see note to Gamble-Robinson Commission Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

In Error to the Circuit Court of the United States for the Northern District of Texas.

Action by the American Tie & Timber Company, Limited, against the Kansas City Southern Railway Company and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

The plaintiff in error sued the Kansas City Southern Railway Company and the Texas & Pacific Railway Company in separate suits, and the two cases were consolidated by the court below and tried together. In the petition against the Kansas City Southern Railway Company, the plaintiff alleged: That on March 16, 1904, said defendant filed with the Interstate Commerce Commission of the United States its joint tariff "Port Arthur Route" No. 216-D, applying on lumber, car loads, all kinds (other than butternut, cherry, walnut, and foreign woods of value), and articles taking same rates, from points on the line of said railway to points in Kansas, by which defendants established and put into effect a rate between points on its line in Arkansas and Louisiana, and the town of Linwood, Kan., of 24 cents per 100 pounds on, amongst other things, oak lumber, which rate from thence hitherto was continuously in effect, the defendant being a common carrier transacting the business of interstate commerce between all the points mentioned in the tariff; that on July 23, 1907, plaintiff made a contract with the Union Pacific Railway Company to deliver to it 150,000 oak cross-ties, f. o. b. cars at Linwood, Kan., delivery to commence on or before October 1, 1907, and continue at the rate of 15,000 ties per month until deliveries should be completed, at the price of 86 cents per tie, based on the existing rate of 24 cents per hundredweight; that under said contract, between its date and November 30, 1907, plaintiff accumulated at stations along defendant's railroad in Arkansas and Louisiana, for the purpose of shipping over the said railroad, 33,194 cross-ties made of oak, sawed, riven, and hewn in conformity with the said contract, which were distributed at various points named, and on or about October 10, 1907, and on various dates thereafter, requested defendant to furnish cars to be loaded with said cross-ties and transported to Linwood, Kan., and it transported and delivered two cars of said cross-ties at said 24-cent rate, but thereafter continuously refused to receive and transport said cross-ties under its rate of 24 cents, or any other rate, thereby unduly, unlawfully and unreasonably discriminating against oak cross-ties, and against the several localities where same were situated, for the purpose of preventing the movement of the said cross-ties to points off its line of railroad, seeking thereby to compel plaintiff to sell same to defendant, which is a large purchaser of such cross-ties, thereby subjecting the plaintiff, such traffic, and the localities mentioned to undue and unreasonable prejudice and disadvantage, inuring to the benefit of defendant as a consumer and purchaser of oak cross-ties; that by reason of the refusal to furnish cars and to transport said cross-ties, plaintiff suffered a loss of $8,796.41, being the difference it would have received for said cross-ties under said contract and the present value of said cross-ties, and the further sum of $9,657.02, the profit on 58,806 cross-ties of the 90,000 cross-ties it would have put out and shipped over said line under said contract; that by these acts the defendant further became liable to pay the plaintiff $2,000 as a reasonable attorney's fee for the institution and prosecution of this suit.

The same allegations were made against the Texas & Pacific Railway Company, except as to the date and number of the joint tariff, the number of ties on its line, and the amount of damages. It was alleged: That, on May 23, 1901, the Texas & Pacific Railway Company issued and filed with the Interstate Commerce Commission its joint through lumber tariff, T. & P. No.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8,500-H, effective June 1, 1901, applying on lumber, all kinds (except butternut, cherry, walnut, and foreign woods of value), laths and shingles and articles taking same rates, from points on its line to points in Kansas, among them Linwood, to which its rate was 24 cents per hundredweight on, amongst other things, oak lumber; that the plaintiff accumulated about 26,310 ties on the line of this road, at stations named, and, upon application, defendant furnished three cars, and, after being loaded with oak cross-ties, transported and delivered them to Linwood, Kan., under said tariff and at said 24-cent rate, but thereafter refused to furnish cars or to transport and deliver said cross-ties at said 24-cent rate, or at any other rate, thereby causing plaintiff a loss on said cross-ties of $7,051.40, and the further sum of $5,727.30, its profit on the remaining 33,690 cross-ties it would have shipped over said road under its contract with the Union Pacific Railway Company; that by reason of the failure of said defendants to transport and deliver said cross-ties, plaintiff was unable to make delivery of 15,000 cross-ties per month, as required under said contract, and same was canceled by the Union Pacific Railway Company therefor, on December 17, 1907.

In its answer the Kansas City Southern Railway Company alleges that tariff No. 216-D, and especially that part applying to lumber between points on its line to Linwood, Kan., was not in force at the times complained of, but the same was amended and filed June 16, 1907, with the Interstate Commerce Commission, to become effective August 18, 1907, and thereafter it had no joint through rate applying on oak lumber or oak cross-ties from any of the points on its railroad in either Arkansas or Louisiana through to Linwood, Kan., and could not receive and transport such cross-ties without violating the provisions of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]); that if tariff No. 216-D had been in effect, it would have been unlawful to have received for through transportation or to have transported the cross-ties from the points named to Linwood, Kan., for the rate of 24 cents, or any other rate, as under the rules, regulations, and authority of the Interstate Commerce Commission cross-ties are manufactured products and could not be included under the general term of lumber, and in articles mentioned in said tariff, manufactured cross-ties or cross-ties of any character do not appear; that on October 12, 1906, it published a tariff, effective November 14, 1906, making a rate of 60 cents per cross-tie from certain stations on its line in Arkansas to Kansas City, Mo., which said points are all nearer Kansas City than the station named by plaintiff in Louisiana; that as soon after October 24th as it could prepare and publish a tariff of through rates from all points on its line to Kansas City, Mo., and to other points on its line, to wit, on November 1, 1907, it published and filed with the Interstate Commerce Commission its freight tariff of through rates, K. C. S. No. 878-D, applying on all wooden cross-ties, except yellow pine, in car loads, which tariff became effective December 5, 1907, fixing a rate of 19 cents per hundredweight to Kansas City from all points named by plaintiff in Arkansas, and 23 cents per hundredweight from the Louisiana points, and after said date plaintiff could have shipped the cross-ties at said rates; that it is not required by law to publish and file with the Interstate Commerce Commission tariffs or rates or charges to be applied to commodities moving beyond its line of railroad as that is a matter of contract and agreement between the different carriers, and plaintiff could have applied to the Interstate Commerce Commission and had it establish through joint rates from and to the points desired, and its failure to do so caused and contributed to the loss and damages alleged to have been sustained by plaintiff.

The Texas & Pacific Railway Company answered that its lumber tariff, No. 8,500-H, quoting a rate of 24 cents per hundredweight on lumber and various articles taking lumber rate, did not include or cover the charge for transportation of oak railway cross-ties, which is a separate and distinct and well-recognized freight commodity, as to which, at the times mentioned, defendant did not have any established or filed tariff under the terms of the interstate commerce act or laws of the United States, under which it could have lawfully accepted and transported the cross-ties offered by plaintiff; that after demand was made for cars by plaintiff, defendant offered to plaintiff to establish a rate on oak cross-ties of 50 cents per hundredweight between said

points on its line and Linwood, Kan., but later it had some correspondence with the Interstate Commerce Commission and notified it "of its intention to establish said lumber rate of 24 cents as applicable to the movement of oak ties between said interstate points," and did issue and forward to the said commission its joint through lumber tariff, so amended as to include "wood, railroad ties, all kinds, car loads at said rate."

Evidence was offered which will be referred to in the opinion so far as is necessary.

At the conclusion of the case, the court instructed the jury to find for the defendants. The plaintiff here assigns this charge as error.

R. W. Rodgers (R. P. Dorough, on the brief), for plaintiff in error.

Hiram Glass and T. B. McCormick (S. W. Moore, W. L. Hall, and Glass, Estes, King & Burford, of counsel), for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). It is unlawful for any common carrier engaged in interstate commerce "to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage whatsoever." Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155). The statute affords a remedy for the violation of the act by providing:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." 24 Stat. 379, 382, § 8.

The petition states a cause of action under this section, for it charges the unjust discrimination condemned by the statute. It was held, in Paxton Tie Company v. Detroit Southern Railroad Company, 10 Interst. Com. Rep. 422, that the defendant in that case unjustly discriminated against the plaintiff by refusing to furnish cars for the shipment of cross-ties while it did furnish cars to others for the interstate shipment of other freight.

The reason assigned by the defendants for refusing to furnish the cars to transport plaintiff's cross-ties is that they had not filed and published a tariff which embraced cross-ties. They contend that if they had transported the cross-ties they would have violated the following portion of the Hepburn act:

"No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in

such tariffs than the rates, fares and charges which are specified in the tariff filed and in effect at the time. * * *" Act June 29, 1906, c. 3591, § 2, 34 Stat. 584, 587.

Both on the averments of the petition and the defense presented, the case turns on the question as to whether or not the schedules filed by the defendants include railway cross-ties which the plaintiff was seeking to transport.

The written evidence offered by the plaintiff sustained its averments as to the words used in the tariff schedules of the defendants. Joint tariff No. 216-D of the Kansas City Southern Railway Company included "lumber, car loads, all kinds," with exceptions not material. The lumber tariff of the Texas & Pacific Railway Company No. 8,500-H included "lumber, all kinds," with exceptions not relevant. The rate fixed by both schedules was 24 cents per hundredweight, as alleged in the petitions. The Kansas City Southern Railway Company, in its answer, alleges that its schedule of rates was changed, and that at the time the plaintiff applied to have the cross-ties transported it had no rates fixed which would be applicable. It claims that this change was made by an amendment of June 16, 1907, but an examination of that amendment, which was in evidence, while it shows a change of rates on specific named articles, does not, as we understand it, change the schedule so far as it relates to lumber. It seems, therefore, that both defendants alike must stand on the contention that "ties are manufactured products and could not be included under the general term of lumber"; or, as otherwise expressed, that fixing a rate of 24 cents per hundredweight on lumber did not include or cover the charge for transportation of railway cross-ties.

"Lumber" is a generic word of indefinite meaning. In one contract or written paper, in the light of the context, it might be more comprehensive than in another contract or writing where the context might tend to limit its meaning. When unlimited by surrounding circumstances or by the context, the word includes many specific things. Cole, C. J., said, in Williams v. Stevens Point Lumber Co., 72 Wis. 487, 489, 40 N. W. 154, 155, the word "lumber" includes "any timber sawed or split for use." The Century Dictionary gives the same definition: "Timber, sawed or split for use, as beams, joists, planks, staves, hoops and the like." The definitions found in other dictionaries do not vary greatly from this. Laths are said to be lumber in Babka v. Eldred, 47 Wis. 189, 191, 2 N. W. 102, 559; and shingles are said to be included in the word, as used in a statute (Gross v. Eiden, 53 Wis. 543, 547, 11 N. W. 9); and lumber is said to include fence posts in Ryan v. Guilfoil, 13 Wash. 373, 43 Pac. 351, and the court observed:

"It matters not whether they are split through the medium of a maul and wedge or through the medium of machinery in a mill; they are in either case manufactured from timber. * * *"

There are other cases indicating the generic character of the word. Sands v. Sands, 74 Me. 239; Bondur v. Le Bourne, 79 Me. 21, 7 Atl. 814. The cases that deal with the meaning of the word "lumber" indicate that it may mean anything manufactured out of the log with

saw, ax, maul and wedge, or machine, for building houses, bridges, fences, or railroads. After the product leaves the log for commercial use, if it is suitable to use for any of these purposes, it may be denominated "lumber," as the word is used in this country.

The schedule of tariffs of both defendants had rates on "lumber, car loads," and "lumber, all kinds," but fixed no rates on railway cross-ties as a specific article. One of the defendants received two car loads of the cross-ties from the complainant and transported them from Frierson, La., to Linwood, Kan., on the rate fixed by the tariff schedule for lumber—24 cents per hundredweight. Six waybills were in evidence showing that the other defendant had moved six car loads of oak cross-ties from Fouke, Ark., to Ft. Worth, Tex., on through rate shipments. By these shipments it appears that the defendants construed the word "lumber" in their tariff schedules to include railway cross-ties.

It may be true that the defendants could have designated railway cross-ties as a separate commodity, but they would have been required to fix the lumber rate for their transportation. The classification of railway cross-ties in a different class from other lumber, imposing upon them a higher rate, has been held to be unjust discrimination. Reynolds v. Railway Company, 1 Interst. Com. Rep. 393. See, also, Railroad Company v. Wilson, 132 Ind. 517, 32 N. E. 311, 18 L. R. A. 105.

There must be a new trial, and, in view of that fact, we should not unnecessarily comment on the evidence and the impression it produces on our minds. It is sufficient to say that, in our opinion, in view of the evidence to which we have referred, the trial court should have not instructed the jury, as matter of law, that the word "lumber," as used in the tariff schedules, did not include railway cross-ties, and that therefore the court erred in directing a verdict for the defendants.

Reversed.