## POWERS et al. v. CADY et al.

(District Court, W. D. Louisiana, Alexandria Division. November 13, 1925.)

No. 1482.

1. **Commerce** ⬡89—**Action for refusal to furnish cars held not within exclusive jurisdiction of Interstate Commerce Commission.**

Action against railroad and others for failure and refusal to furnish cars, in violation of Interstate Commerce Act Feb. 4, 1887 (Comp. St. § 8563 et seq.), as amended, particularly as amended by Elkins Amendment (Comp. St. §§ 8597–8599), *held* not within exclusive jurisdiction of Interstate Commerce Commission.

2. **Election of remedies** ⬡7(1)—**Allegation in petition in action for refusal to furnish cars held not to show election to pursue remedy before Commission, barring action.**

Allegations, in petition in action against railroad and others for refusal to furnish cars to plaintiff, that plaintiff had complained to Interstate Commerce Commission, *held* not to show that plaintiff had elected to pursue its remedy before Commission, and was therefore precluded from suing in courts by Interstate Commerce Act, § 9 (Comp. St. § 8573).

3. **Carriers** ⬡36—**Action for refusal to furnish cars held not barred by one-year state statute of limitation.**

Action against railroad and others for refusal to furnish plaintiff cars *held* within two-year statute of limitations (Interstate Commerce Act, § 16 [Comp. St. § 8584]), and not barred by one-year limitation, under Rev. Civ. Code La. art. 3536.

4. **Carriers** ⬡36—**Complaint in action for refusal to furnish cars held sufficient without allegation that discrimination was undue or unreasonable.**

Petition in action against railroad for failure and refusal to furnish cars, which alleged a willful and deliberate refusal, without semblance of justification, and which went into much detail, *held* sufficient, though it did not, in language of statute, charge that discrimination was "undue" or "unreasonable."

5. **Carriers** ⬡36—**Right of action for unlawful refusal exists, not only against railroad, but others inducing discrimination.**

Under Comp. St. § 8574, par. 4, right of action for unlawful refusal to furnish cars exists not only against railroad, but against others inducing such discrimination.

At Law. Action by John T. Powers, Jr., and another, receivers of the Ward Lumber Company, against W. M. Cady and others. On exceptions to petition. Exceptions overruled.

White, Holloman & White and Hakenyos, Scott & Provosty, all of Alexandria, La., for plaintiffs.

Overton & Hunter, of Alexandria, La., for defendants.

DAWKINS, District Judge. This is an action at law sounding in damages against the Glenmora & Western Railway Company, the W. M. Cady Lumber Company, Limited, and W. M. Cady, personally, for the alleged failure and refusal to furnish to the Ward Lumber Company, of which plaintiffs are receivers, cars for the handling of the output of the latter's sawmill for a period of approximately 11 months during the year 1922, in violation of the provisions of "the Interstate Commerce Act, approved February 4, 1887 [Comp. St. § 8563 et seq.], as amended, and particularly as amended by the Elkins Amendment thereto [Comp. St. §§ 8597–8599]."

[1] Defendants excepted to the petition upon several grounds, the first of which challenges the jurisdiction of the court ratione materiæ, upon the contention that the matter complained of, by the provisions of the same act, falls exclusively within the power and duties of the Interstate Commerce Commission, and which must first be determined by that body as a prerequisite to the right to invoke the jurisdiction of the courts. It is necessary, therefore, to state to some extent the allegations of the petition.

It is alleged that the defendant railway company is engaged in both interstate and intrastate business, and that for more than 3 years prior to January 1, 1923, it had operated a line of railroad, as a common carrier, from McNary, in Rapides parish, in a westerly direction, for a distance of 17 miles; that the only industries of any consequence upon its said line were the plants of plaintiff, the Glenmora Naval Stores Company, the W. M. Cady Lumber Company, Limited, operating a large sawmill, and a gravel company, the three last mentioned concerns being owned or controlled by the same interests or individuals who owned and operated the railway company, and particularly W. M. Cady and Branch Smith, who were alleged to be "the chief stockholders thereof"; that the said railway company arbitrarily, and without reason or excuse, and through the influence and inducement of the said Cady Lumber Company and the said W. M. Cady, who controlled and directed the actions and policy of the said railway company, refused to furnish petitioner the cars needed and demanded for its business, and from the 1st of February to the last of December, 1922, the said railway company, because of the said influence, refused to furnish petitioner any cars whatsoever; that it furnished all of the cars needed or requested by the said industries

controlled by Cady and his associates, and that it could and should have supplied petitioner's needs, but that for the reasons stated it willfully and designedly refused to do so, thereby discriminating against petitioner, and causing a great loss and injury in its business, amounting to the sum of $100,000, the details of which are set forth at length in the petition.

Petitioner otherwise alleges that the defendant railway company had access to or connection with four other trunk line railroads, and that, had it desired, it could and would have obtained "an entirely adequate and reasonable supply of cars for the said Ward Lumber Company."

The questions presented by the several pleas have been ably argued and briefed on both sides, and the authorities cited at first blush would appear to support their respective contentions. However, upon closer analysis and careful examination, I believe that the line of demarcation between those which have held that complaints based upon alleged violations of the interstate commerce statute should first be determined by the Interstate Commerce Commission, and those holding that the party aggrieved may apply directly to the courts for relief, is to be found in the test as to whether the acts complained of were such as affected the general business or policy of the railway company in its relation to all shippers, or those of a particular class, or merely involved an individual discrimination or violation of rules and regulations adopted by it, or prescribed by the Commission, or some specific provision of the law itself, which did not affect the right or business of any one else.

In the first class, that is, where it was alleged that the rule or practice, although applicable to all shippers, or a particular class, was unreasonable or discriminatory, the same raised issues falling peculiarly within the jurisdiction of the Commission, which is charged with the administration of the Interstate Commerce Act, for what might be discrimination or a violation of the spirit of the law in one case might not be so in another, dependent upon circumstances, and until the Commission had so found the courts would be without power to enforce rights arising therefrom. However, where, as here, it has been charged that the railway company, in violation of the law or its duty to all shippers to furnish equipment reasonably necessary to the handling of the business offered, has arbitrarily refused to perform such duty, not in the execution of any rule or regulation, but solely with the view of injuring or stifling the business of one of its patrons, no question is raised requiring the exercise of discretion or the administrative powers of the Commission, and it simply becomes a question of fact and law, first, as to whether such acts were committed; and, secondly, as to the extent of the damage.

Counsel for plaintiffs, in exception, have cited a number of cases, including Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 448, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, Baltimore & Ohio R. R. Co. v. U. S. ex rel. Pitcairn Coal Co., 215 U. S. 481–500, 30 S. Ct. 164, 54 L. Ed. 292, Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U. S. 247–303, 33 S. Ct. 916, 57 L. Ed. 1472, Morrisdale Coal Co. v. Pennsylvania R. R. Co., 230 U. S. 304–315, 33 S. Ct. 938, 57 L. Ed. 1494, U. S. v. New River Co., 265 U. S. 533–545, 44 S. Ct. 610, 68 L. Ed. 1165, Pennsylvania R. R. v. Clark Bros. Mining Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406, and U. S. v. Pacific & A. R. & N. Co., 228 U. S. 87–108, 33 S. Ct. 443, 57 L. Ed. 742. However, a careful examination of these cases will disclose that all of them involve some rate, rule, or practice affecting shippers generally, or a particular class, in which it was alleged that the application thereof resulted in a discrimination or unjust treatment of the complainant, to determine which required an investigation by the Commission of the circumstances under which the acts were done, in order to say whether the same were reasonable or not.

For instance, in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., supra, it was charged that the railroad company had discriminated against the complainant by charging an "unreasonable rate, which exceeded in the aggregate by the sum sued for a just and reasonable charge. There were, moreover, averments that the rate exacted was discriminatory, constituted an undue preference, and amounted to charging more for a shorter than for a longer haul." It is thus seen that the matter complained of involved the question of the reasonableness of the charge, when taking into consideration the circumstances of the location of the plant, competition with other lines, amount of tonnage, etc., which were questions peculiarly within the power of the Interstate Commerce Commission to investigate and decide primarily. I can see no analogy between that case and the one at bar, which, as above indicated, embraces a charge of willful refusal to furnish cars

needed and demanded for the transportation of petitioner's property.

In the case of Baltimore & Ohio R. R. Co. v. U. S. ex rel. Pitcairn Coal Co., the opening sentence of Mr. Justice White, who was the organ of the court, indicates clearly that it involved the reasonablesss of a rule or regulation of the railway company in the distribution, of its cars among coal mines along its route. The language used is as follows:

"To decide the merits of this cause will require us to determine the legality of the regulations of the Baltimore & Ohio Railway Company, by which that company distributed cars to coal mines along the line of its road in case of car shortage. As an incident to this general question we would further be required to consider the relations, irrespective of its mere attributes and duties as a common carrier, of the Baltimore & Ohio Railroad with various coal mines along the line of its road and the relation with or control over some, if not all, of these coal mines by other mines or mine operators, and in addition to consider the relation of the Baltimore & Ohio Railroad with the Cumberland & Pennsylvania Railroad." (Italics by the writer.)

Thus clearly he demonstrates that the case involved a multitude of circumstances and considerations requiring the exercise by the Commission of its powers in determining the reasonableness of the action of the railroad.

The case of Mitchell Coal Co. v. Pennsylvania R. Co. involved an action to recover from the defendant because of a discrimination in allowing rebates to another coal company under certain arrangements by which the coal of the latter was handled from the mine to the line of the defendant company. It was found that the determination of whether or not this was a fair practice or a discrimination depended upon the circumstances under which the rebate was allowed, and therefore involved an investigation of the interrelations between the railroad company and the different coal mines, as to the handling of coal for all of said companies. Therefore it would seem the subject-matter was one properly addressed to the jurisdiction and powers of the Interstate Commerce Commission, as distinguished from a case of the kind now before the court.

In Morrisdale Coal Co. v. Pennsylvania R. R. Co. the first syllabus discloses that the reasonableness of a rule of the railroad company for the distribution of cars was involved, as will appear from the following:

"Without preliminary action by the Interstate Commerce Commission declaring that the carrier had, by the rule adopted in regard to distribution of cars, discriminated against a shipper in such distribution, the federal courts have no jurisdiction of a suit by such shipper for damages alleged to be occasioned by undue discrimination against him and undue preference in favor of his competitor."

The rule complained of was applicable to conditions arising as a result of car shortage, and necessarily involved the reasonableness of the rule or regulation of the railroad company, and of which matter, of course, the Interstate Commerce Commission had jurisdiction, under the express provisions of the Interstate Commerce Act.

As illustrating the matter involved in the case of U. S. v. New River Co., we quote the first paragraph of the opinion by Mr. Justice Butler, as follows:

"This suit was brought by the appellee against the Chesapeake & Ohio Railway Company and the Virginian Railway Company, competing interstate carriers by railroad, the United States, and the Interstate Commerce Commission, to enjoin the carriers from applying a certain rule (rule 4 of Circular C. S.–31, Revised) for the distribution of coal cars, and to set aside the decision and order of the Commission of December 11, 1922, in certain proceedings instituted by the appellees against the defendant carriers."

All that the court decided in that case was that it could not substitute its "judgment for the findings and conclusions of the Commission, made within the scope of its power to regulate the distribution of coal cars," and that "a rule fixing the number of cars distributable to coal mines in proportion to the daily capacity of each to produce" was "not arbitrary, unreasonable, or violative of due process, as applied to mines served by more than one carrier."

The suit of Pennsylvania Railroad Co. v. Clark Bros. Coal Mining Co. was one for damages alleged to have been suffered as the result of discrimination between the plaintiff and other coal companies from the rule of the defendant company for the distribution of cars between the several mines, and, as in all of the preceding cases, the court held that this was a matter properly cognizable in the first instance by the Interstate Commerce Commission, for it was said:

"Whether the rule or method of car distribution for mines furnishing coal f. o. b. at the mines for shipment to other states as practiced by a railroad company is unjustly

discriminatory is one which the Interstate Commerce Commission has authority to pass upon. Where the complaint involves an attack upon the rule or method of car distribution practiced by the carrier in distributing cars for interstate shipments, no action is maintainable in any court for damages alleged to have been inflicted thereby until the Commission has made its finding as to the reasonableness of such rules and methods."

In addition to this, it was found that the complainant had already submitted its case to the Interstate Commerce Commission, in so far as its interstate business was concerned, and that tribunal had rendered judgment in its favor. It then attempted in the cited case to recover additional statutory damages, both for interstate and intrastate matters in the state court, some of which involved the identical transactions embraced in the proceedings before the Commission. The Supreme Court held that, having chosen to assert its rights under the option granted in the Interstate Commerce Act before the Interstate Commerce Commission, it could not thereafter, because of the express prohibition of the statute itself, seek redress in any other forum excepting, of course, the right to have reviewed the decision of the Commission in the federal court. Hence this case is clearly distinguishable from the one now before the court.

The case of U. S. v. Pacific & A. R. Ry. & Nav. Co. et al. was one in which the defendants were being prosecuted criminally in the United States court for an alleged illegal combination or conspiracy to violate the Interstate Commerce Act. It was held that, before the courts could hear such a complaint at the hands of the government, it was necessary that the agreements, systems, rules and practices of the several carriers involved should first be investigated, and their validity, reasonableness, and fairness determined, by the Interstate Commerce Commission. Again I see no analogy with the case at bar.

Turning now to the authorities cited in support of the contention of petitioners that the courts are vested with jurisdiction to determine issues of the kind presented in the present case, I take up, first, the case of Pennsylvania Railroad Co. v. Puritan Coal Company, 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867. In beginning the statement of the case Justice Lamar, as the organ of the court, said:

"The Pennsylvania Railroad Company, an interstate carrier, was sued in a state court for damages caused by its failure to furnish the Puritan Company with cars in which to load coal for shipment to points within and without the state. The pleadings alleged not only that the carrier had failed to perform its duty to furnish cars, but that in violation of a state statute it had unjustly discriminated against the Puritan Company by failing to distribute cars in accordance with the *carrier's own rule* that, in time of shortage, they could be allotted to the coal companies on the basis of mine capacity." (Italics by the writer of this opinion.)

As indicated, the case had originated in the state court, and the question was raised as to the right to sue in a state tribunal under the Interstate Commerce Act, and this was disposed of by holding that the statute did not vest the right of action exclusively in the federal courts, but by the latter clause of section 22 it had expressly reserved the common-law rights and remedies of the shipper, and in discussing this feature, along with the identical point now before the court, that is, as to the right to sue without first appealing to the Interstate Commerce Commission, the Supreme Court, at page 131 (35 S. Ct. 487), said:

"There are several decisions, already cited, which hold that suits against railroads for unjust discrimination in interstate commerce can only be brought in the federal courts. But it must be borne in mind that there are two forms of discrimination—one in the *rule*, and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the Commission has declared the rule to be unjust, redress must be sought before the Commission or United States courts of competent jurisdiction as provided in section 9.

"But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no

administrative question involved; the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or federal courts.

"4. It makes little difference what name is given the cause of action sued on in the present case, or whether it is treated as a suit for a breach of the carrier's common-law duty to furnish cars, or an action for damages for the carrier's unjust discrimination in alloting cars to the Berwin-White Company, while at the same time refusing to follow its own rule and furnish them to the Puritan Company on the basis of mine capacity. In either case the liability is the same; for where the carrier performs its duty to A., and at the same time fails to perform its duty to B., there has been, in a sense, a discrimination against B. In those instances neither the cause of action nor the jurisdiction of the court is defeated, because the breach of duty is also called an unjust discrimination."

In the case of Pennsylvania Railroad Co. v. Sonman-Shaft Coal Co., 242 U. S. 120, 37 S. Ct. 46, 61 L. Ed. 188, which was also a suit for damages for the failure to furnish cars, I quote from the syllabi as follows:

"If no administrative question is involved, a claim for damages for failure, upon reasonable request, to furnish to a shipper in interstate commerce cars sufficient to meet his needs, may be enforced in a state as well as the federal court, and without preliminary finding by the Interstate Commerce Commission.

"Such remedy is preserved by section 22 of the Interstate Commerce Act. The modes of redress provided by sections 8 and 9 are not exclusive."

And further in the body of the opinion, at page 124 (37 S. Ct. 48), it was said:

"* * * That claims for damages arising out of the application, in interstate commerce, of *rules* for distributing cars in times of shortage, call for the exercise of the administrative authority of the Commission *where the rule is assailed as unjustly discriminatory,* but where the assault is not against the rule but against its unequal and discriminatory application, no administrative question is presented and the claim may be prosecuted in either a federal or state court without any precedent action by the Commission; * * * and that, if no administra-

tive question be involved, as well may be the case, a claim for damages for failing upon reasonable request to furnish to a shipper in interstate commerce a sufficient number of cars to satisfy his needs, may be enforced in either a federal or a state a court without any preliminary finding by the Commission, and this whether the carrier's default was a violation of its common-law duty existing prior to the Hepburn Act of 1906, or of the duty prescribed by that act. * * * Eastern Ry. Co. v. Littlefield, 237 U. S. 140, 143 [35 S. Ct. 489, 59 L. Ed. 878]; Illinois Central R. R. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 283 [35 S. Ct. 760, 59 L. Ed. 1306]; Pennsylvania R. R. Co. v. Clark Coal Co., 238 U. S. 456, 472 [35 S. Ct. 896, 59 L. Ed. 1406]."

See, also, Chicago, Rock Island & Pacific Ry. Co. v. Hardwick Farmers' Elevator Co., 226 U. S. 433 et seq., 33 S. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203; American Tie & Timber Co. v. Kansas City Southern R. R. Co., 175 F. 28, 99 C. C. A. 44.

My conclusion, therefore, is that, since the case at bar involves nothing requiring the exercise by the Commission of its administrative powers to determine the reasonableness of the conduct of the defendant railway company and the other defendants, the plea to the jurisdiction is without merit, and should hence be overruled.

[2] Secondly, it is contended that, because the petition alleges that the action of the defendant railway company was called to the attention of the Interstate Commerce Commission, and upon receipt of a communication from the said Commission, "to the effect that said Ward Lumber Company had complained of said practice to said defendants above named herein, it [the railway company] proceeded to furnish a considerable amount of cars for the service of the said Ward Lumber Company and continued thereafter to do so," that the plaintiff had elected to pursue its remedy before the Commission, and was therefore precluded from suing in the courts by the exprss provision of section 9 of the Interstate Commerce Act. However, there is no allegation that the petitioner had asserted any claim for damages suffered through the alleged misconduct of defendants, but merely that said conduct was brought to the attention of the Commission and resulted in its discontinuance.

In the case cited by defendants, plaintiffs in exception, the whole question of discrimination and the right to damages had been submitted to the Commission, and when this

is done the statute, of course, provides that the complainant cannot thereafter resort to the courts until the Commission has acted. But no such condition exists in the present case. It has been said, with much support in reason and logic, that a complainant may, at his option, submit alone to the Commission the question of the legality or discriminatory character of the rule or practice of the railway company and upon a finding by it of the existence of such condition resort to the courts for the determination of the extent of the injury. In the case of Minds v. Pennsylvania R. R., 237 F. 269, the District Court of the United States for the Eastern District of Pennsylvania said:

"The remedies provided are these: Any form of action, otherwise open to the injured party, is preserved to him. He is given the right to resort to an action at law, or he may, at his option, ask the Commission to award him damages. If he brings his action at law, it is necessarily based upon two propositions: One is that the regulation of which he complains is unlawful, and the rule which he seeks to have established is the proper one. Whether this be a conclusion of law or a finding of fact is an academic distinction, but it must in fact appear. The other is the fact and amount of his damage. The first is an administrative question, and for obvious reasons is committed to the Commission, and to the Commission alone, to find. The second is a juridical question, which may be submitted to the courts, or to any tribunal having the lawful power to determine it. The consequence follows that recourse to the Commission is only in part optional.

"The administrative questions must be first determined by the Commission, because, if an action were brought at law, without this first finding, the plaintiff could not make out his case. His real option is this: He may submit the administrative question alone to the Commission, and thus, having established his right to recover his damages, may bring his action at law, and prove both his injury and the amount of his damages, or he may exercise the right given him by the statute by submitting both questions to the Commission. If he takes the first course, the action is one for damages and subject to well-known rules. If he takes the second course (as plaintiffs did), what results? Had the right of trial by jury not been involved, Congress would doubtless have given the award of the Commission the effect of a judgment. The complainant, being a volunteer, is concluded by what the Commission does.

The defendant is not concluded. If the defendant complies with the order, the plaintiff is done. If the order is not complied with, the plaintiff may have recourse to the courts (federal or state), setting forth his injury, the fact of his complaint to the Commission, and the order made thereon, and that it has not been complied with. In the words of the statute, the cause then proceeds as an action for damages, except that the findings of the Commission are made evidence, and the defendant must pay costs and counsel fees."

See, also, Phillips v. Grand Trunk Ry. Co., 236 U. S. 665, 35 S. Ct. 444, 59 L. Ed. 774.

I conclude, therefore, that the contention that the plaintiffs had elected to submit their case to the Commission is not supported by the pleadings.

As to the third ground of the exception, that is, that as a condition precedent the matter complained of should first have been submitted to the Interstate Commerce Commission, I think what has been said on the subject of jurisdiction effectively disposes of this contention.

[3] In the fourth ground of the exception, defendants plead the prescription of one year, under article 3536 of the Revised Civil Code of Louisiana. In the case of Kansas City Southern Ry. Co. v. Wolf, 261 U. S. 133, 43 S. Ct. 259, 67 L. Ed. 571, the Supreme Court had under review the decision of the Circuit Court of Appeals for the Eighth Circuit (272 F. 681), in which it had been held, in an action to recover of the railway company overpayment of freight charges, that inasmuch as the issues raised involved nothing requiring the action of the Interstate Commerce Commission, the period of prescription of two years for prosecuting claims before that body had no application, but that limitation was governed by the state law. Hence the plea of prescription under section 16 of the Interstate Commerce Act was overruled by the Circuit Court of Appeals. In reversing that conclusion the Supreme Court, at page 139 (43 S. Ct. 260), quoted approvingly what it had previously said in the case of Phillips v. Grand Trunk Ry. Co., 236 U. S. 662–667, 35 S. Ct. 444, 446 (59 L. Ed. 774), as follows:

"Under such a statute [referring to Interstate Commerce Act] the lapse of time, not only bars the remedy, but destroys the liability (Finn v. United States, 123 U. S. 227, 232 [8 S. Ct. 82, 31 L. Ed. 128]), whether complaint is filed with the Commission or

suit is brought in a court of competent jurisdiction. This will more distinctly appear by considering the requirements of uniformity which, in this as in so many other instances must be borne in mind in construing the Commerce Act. * * * To have one period of limitation where the complaint is filed before the Commission and the varying periods of limitation of the different states, where a suit was brought in a court of competent jurisdiction, or to permit a railroad company to plead the statute of limitations as against some and to waive it as against others would be to prefer some and discriminate against others in violation of the terms of the Commerce Act which forbids all devices by which such results may be accomplished. * * * The Railroad Company, therefore, was bound to claim the benefit of the statute here and could do so here by general demurrer; for, when it appeared that the complaint had not been filed within the time required by the statute, it was evident, as matter of law, that the plaintiff had no cause of action."

It would seem, therefore, in the light of these decisions, that actions for damages against carriers under the act of 1887, as amended, whether brought in the first instance before the Commission or before the courts, are governed by the period of limitations provided in section 16; that is, the suit must be filed within two years after the damages have accrued.

[4] The fifth and last ground of exception is that the petition discloses no cause of action. Defendants contend that, because the petition does not charge "undue" or "unreasonable" discrimination, no cause of action is shown under the statute. However, while these identical words may not have been used, the petition otherwise charges a willful and deliberate refusal, without the semblance of justification by the defendants, to furnish any cars within a stated period, going into much detail as to the acts and doings of the defendants, and I take it that this is sufficient, even though the exact words of the law are not used.

[5] In addition, in brief, it is said that the statute gives no right of action against any one except the railway company, and hence no ground for relief is shown against W. M. Cady and the Cady Lumber Company; but upon oral argument this contention was abandoned, when the attention of counsel was called to the provisions of paragraph 4 of section 8574 of the Compiled Statutes.

For the reasons assigned, the exceptions of defendants should be and are overruled.