**SCHWARTZMAN v. UNITED AIR LINES TRANSP. CORPORATION.**

Civ. No. 698.

District Court, D. Nebraska, Lincoln Division.

March 18, 1947.

Joseph Ginsburg, and Ginsburg & Ginsburg, all of Lincoln, Neb., for plaintiff.

Max Kier, of Lincoln, Neb., for defendant.

DELEHANT, District Judge.

The defendant caused this action to be removed to this court from the District Court of Lancaster County, Nebraska on the unchallenged ground of diversity of citizenship and the existence of a controversy involving more than the jurisdictional amount. The plaintiff's petition is in two counts, the first to recover alleged damages for the failure and refusal of the defendant on October 25, 1942 to transport him as a passenger by airplane from Omaha, Nebraska to San Francisco, California, despite his earlier purchase of a ticket and arrangement for reserved space for such transportation and the defendant's alleged explicit assurance to him that it would carry him to the desired destination on the scheduled flight and before a designated time;[1] the second to secure the return of the price allegedly paid by him for his ticket.

A motion for an order striking the entire first count from the petition was filed by the defendant. Omitting a charge of improper venue which has not been supported by argument, and seems to be pointless, the motion is grounded upon alleged (a) lack of jurisdiction over the subject matter; (b) failure to state a claim upon which relief can be granted; and (c) statutory vesting of primary jurisdiction in the Civil Aeronautics Board, with plaintiff's failure to exhaust his remedies before the board, which, the defendant contends, deprives this court of jurisdiction. Upon submission, the contention principally argued was the last one, which enters into the other two, and constitutes the sole basis of the first one. The motion to strike has been submitted under Rule 12(b), Federal Rules of Civil Procedure, Title 28 U.S.C.A. following Section 723c, after the fashion of a motion to dismiss.

The sole object of the challenged first count is the recovery of a judgment for a sum of money in reimbursement for damages for the alleged breach of an averred contract of carriage. No disciplinary, regulatory, or other, relief, either affirmative or negative in form or in substance, is sought in it. The petition does not assail, or question the validity of, any administrative regulation or any practice of the defendant's business, or even explicitly accuse the defendant of the violation of any such regulation or practice.

In the current posture of the pleadings the motion of the defendant appears to the court to be wholly without merit.

The general assertion of the failure of the petition to state a claim upon which relief may be granted is unsupported by argument or the citation of authority. But the court has considered it in relation to the petition. That pleading, as yet undenied, and not otherwise obviated, asserts the defendant's sale to the plaintiff of a ticket for the proposed transportation; its assignment to him of space for passage on a particular flight; and its subsequent wrongful and unwarranted refusal to honor its commitment, vide supra. For the purpose of the present ruling only, the motion to strike, or in effect to dismiss, admits those allegations and the legal conclusions reasonably issuing from them which are favorable to the plaintiff. The court is satisfied that, within the scope of the petition, evidence might conceivably be produced, which, if undenied and not nullified by other circumstances, would entitle the plaintiff to relief. And in such a situation, a motion under Rule 12(b) to dismiss,

---

[1] Mention at this point of the alleged oral understanding must not be understood to impute to it any special significance upon the immediately pending question. It is noted only because it is an allegation of the complaint, not to indicate that it either is or is not regarded as setting up a valid special contract of carriage.

on the general ground of failure to state a claim supporting the allowance of relief, must be denied. Sparks v. England, 8 Cir., 113 F.2d 579; Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302; Cohen v. United States, 8 Cir., 129 F.2d 733; Louisiana Farmers' Protective Union v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419; Musteen v. Johnson, 8 Cir., 133 F.2d 106; Cool v. International Shoe Co., 8 Cir., 142 F.2d 318; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865. Divorced, therefore, from the factor of the jurisdiction of this court directly and immediately to entertain this action, without preliminary resort to the Civil Aeronautics Board, the charge of failure to state a valid claim is not well directed against the petition.

Nor does the defendant stand on firmer ground when it seeks at this time to oust this court's jurisdiction, or suspend its present exercise, pending resort by some one, presumably the plaintiff, to the Civil Aeronautics Board. That board simply has no present jurisdiction over the claim asserted by the plaintiff.

In its reply brief the defendant, relying on the doctrine of primary jurisdiction, clearly states its position in the following language: "This principle of law goes to the power of the court to entertain the proceeding. In the absence of a preliminary determination by the administrative agency —in this case, the Civil Aeronautics Board —of technical issues raised by a complaint, a court is without jurisdiction to grant the relief prayed for in a complaint * * *. The purpose of this doctrine is to preserve the integrity of administrative procedure and agencies established by the legislature by referring to the expert body so created decisions requiring technical considerations and the exercise of administrative discretion."

The doctrine of "primary jurisdiction" arises not from express statutory mandate but rather through successive judicial decisions that have been designed to serve the manifest legislative purpose in the erection of regulatory and administrative agencies and the commitment to them of jurisdiction over the operation of certain businesses and problems affected with a public interest.

Though it arose in the first instance, and has most frequently been applied in railroad problems, it has been extended with the developments in business to other fields and, very obviously, has application to air transport. A reviewer has analyzed the practical operation of the rule in this way: "The primary jurisdiction of administrative commissions, as invoked by court decisions, has two main branches: (1) exclusive jurisdiction, where the court has no jurisdiction of the subject matter at all, and the commission must decide the question, with judicial review ordinarily only to safeguard the requirements of due process of law, and possible court action to enforce the commission's order; and (2) exhaustion of remedy, where the court has jurisdiction of the subject matter but the suit is premature, and the court refuses to decide the case until all possible administrative determination has been completed." 51 Harvard Law Review 1252. It is with the second aspect only of the rule's asserted application that the court is now concerned. The subject matter of the action, a simple claim for damages for breach of contract is within the court's jurisdiction. The question is whether it should refrain from the exercise of that jurisdiction in the present case—and more specifically, at the present juncture in the case—while resort is had to the Civil Aeronautics Board for some preliminary but binding ruling upon a material issue.

But the primary jurisdiction rule is not loose or ill defined. Before it may be allowed to oust, or suspend the exercise of, judicial determination in a particular case, it must appear that the solution of the case depends upon the answer to an issue whose determination is by statute committed to an administrative body. The cases in which it has been applied illustrate that limitation upon it. The proper length of this memorandum forbids the copious quotation from any of those cases or even a reference to all of them; but pointed notations to the essential settings of some of them are in order.

The rule had its origin in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann. Cas. 1075. That action was brought in a

state court of Texas by a shipper against a carrier to recover judgment for an amount by which rates charged by the defendant in accordance with its published tariff exceeded the amount alleged by the plaintiff shipper to be reasonable for such service. The supreme court denied the trial court's jurisdiction, and also directed attention to the commission's power under the statute to award reparation to shippers for improper exactions made by carriers before its corrective orders, a power which the Civil Aeronautics Board does not possess, though that circumstance is of no significance in this instance. Baltimore & Ohio R. Co. v. United States ex rel. Pitcairn Coal Co., 215 U.S. 481, 30 S.Ct. 164, 54 L.Ed. 292, was a suit in which a shipper sought by judicial mandate, without previous resort to the Interstate Commerce Commission, to compel a railroad to abandon a published plan for the distribution to competing shippers of coal carrying cars in periods of car shortage, and to follow a course which the plaintiff alleged to be nondiscriminatory, just and equitable. Interstate Commerce Commission v. Illinois Central Railroad Co., 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280, is not procedurally in point, for it was a direct proceeding to review and set aside an order of the commission. In Robinson v. Baltimore & Ohio R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288, a shipper sued in a state court to recover an alleged discriminatory excess in charges for the transportation of coal, according to a filed schedule of rates, neither approved nor disallowed by the Interstate Commerce Commission up to the time of the filing of the suit, the discrimination allegedly arising out of the exaction of a higher rate for coal loaded in one manner than in another. See also Midland Valley Railroad Company v. Barkley, 276 U.S. 482, 48 S.Ct. 342, 72 L.Ed. 664. United States v. Pacific & Arctic R. & Nav. Co. 228 U.S. 87, 33 S.Ct. 443, 57 L.Ed. 742, a criminal case, was partially concerned with the validity of certain counts in an indictment charging violation of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., by certain discriminatory and conspiratory acts and practices. But its discussion of the necessity of preliminary reference to the commission, while undoubtedly valid, is rendered dubiously instructive by its final indecisiveness and the form of its order remanding the case for further study of the indictment by the trial court. Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472, was brought by a shipper to recover damages said to have arisen out of overcharges to the plaintiff resulting from rebates of parts of freight charges granted to the plaintiff's competitors by a railroad through the device of allowing, in varying amounts, service charges incident to bringing coal from their mines to its cars. The payment of such service charges not being necessarily invalid, and their validity or invalidity resting upon their appropriateness to the service rendered, and a presumption of validity obtaining until invalidity should be determined by the commission, the trial court was required by the supreme court to hold the exercise of its jurisdiction in abeyance until that question should be referred to and determined by the commission. (See also the express distinction of that case from Pennsylvania R. Co. v. International Coal Co., noted below). Morrisdale Coal Company v. Pennsylvania R. Co., 230 U.S. 304, 33 S.Ct. 938, 57 L.Ed. 1494 was a suit for damages against a railroad by reason of the defendant's alleged unfair allocation during a season of car shortages of coal cars in pursuance of a rule of distribution promulgated and followed by the railroad, but alleged in the complaint to be unjust and inequitable. Northern Pacific Railway Co. v. Solum, 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221 was a suit originally brought in a Minnesota state court by a shipper to recover from a railroad the excess in charges resulting from the latter's practice in routing shipments, in the absence of explicit shipping orders, over what ultimately developed to be the more expensive of two alternate routes. Director General of Railroads v. Viscose Co., 254 U.S. 498, 41 S.Ct. 151, 65 L.Ed. 372, was a suit in which an extensive shipper resorted without previous recourse to, or action by, the Interstate Commerce Commission to a federal court by way of injunction to prevent the operation by a railroad of an amendment or supplement duly filed with the commission to a

published tariff whereby a commodity reclassification to the plaintiff's disadvantage was proposed.

In Terminal R. Association v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150, after a decree under the Sherman Law, 15 U.S.C.A. §§ 1-7, 15 note, in favor of the United States against sundry transportation instrumentalities, certain of the defendants by civil contempt proceedings sought to enforce rights in the way of the division of joint rates for terminal and transportation services, to which, they conceived, they were entitled under the original decree, but in respect of which no recourse had been had to the Interstate Commerce Commission. In Western and Atlantic Railroad v. Georgia Public Service Commission, 267 U.S. 493, 45 S.Ct. 409, 69 L.Ed. 753, a railroad company sought, without proceeding in the Interstate Commerce Commission, to obtain in a federal court an injunction against the enforcement of an order of the state commission requiring its maintenance of switching service at an industrial siding, upon the ground that the order was discriminatorily burdensome on interstate commerce. Similarly, in Board of Railroad Commissioners of North Dakota v. Great Northern Railway Co., 281 U.S. 412, 50 S.Ct. 391, 74 L. Ed. 936, the complainant carriers, without action before the Interstate Commerce Commission, sought injunctive relief in the federal courts against the effectiveness of North Dakota intrastate rates fixed by state authority upon the ground of their discrimination against interstate commerce. In Texas & Pacific Railway Co. v. American Tie and Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255, a shipper sued to recover damages for a railroad company's refusal to accept for shipment in interstate commerce oak railroad crossties at rates prescribed in the railroad's regular lumber tariff, which the carrier contended did not cover ties for which it had no filed tariff under which it could accept ties for shipment. In Loomis v. Lehigh Valley Railroad Co., 240 U.S. 43, 36 S.Ct. 228, 60 L.Ed. 517, a shipper of grain, without preliminary resort to the Interstate Commerce Commission, sued a railroad company for the cost to the shipper of its construction of temporary doors or bulkheads, adequate to enable ordinary freight cars furnished by the railroad, in the place of specially equipped grain cars, to carry grain, an element which obviously enters into ratemaking. United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408, involved a private civil suit under the Sherman and Clayton Acts, 15 U.S.C.A. § 12 et seq., by one water carrier against sundry others involving claims of conspiracy and discrimination in many respects, including facilities, rates, rebates and other factors committed by the Shipping Act to the Shipping Board. In Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370, the plaintiff joined with a civil demand for injunctive relief under the Sherman Law which properly invoked the jurisdiction of a federal district court certain averments of unfair competitive methods, which, on appeal, the supreme court held to be primarily cognizable by the Federal Trade Commission, rather than by the court. Jurisdiction of the court, however, was sustained because of the Sherman Law charges. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L. Ed. 638, denied the power of a federal court to intercept by injunctive order the holding of a hearing by the National Labor Relations Board upon a charge of union domination by an employer, a subject entrusted to the board by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.

In the cases cited in the foregoing paragraph, as well as in many others, the court recognized and applied the rule of primary jurisdiction for which the defendant contends upon the submission of its present motion. On some occasions the rule completely thwarted the assertion of the trial court's jurisdiction; on others it postponed its exercise pending administrative determination of a factor vital to decision. But it will be obvious from the necessarily meagre references just made to their factual settings and vital issues that in each instance the matter necessarily controlling the decision to which the trial court was invited was one which was by law committed to the primary arbitrament of a commission or board. Generally, the presence

and significance of such matter were made to appear in the original complaint or petition; but, on some occasions, it was not introduced until the filing of responsive pleadings. However and whenever pleaded, its halting consequence was uniform.

But those cases themselves negative the inference that a common law court's jurisdiction is either thwarted or stayed on every occasion when a patron brings an action against a regulated carrier for breach of some duty of transportation. And the defendant now before the court does not claim that courts are always powerless to act in such cases.

Perhaps the distinction is reflected as fairly and clearly in Mitchell Coal & Coke Co. v. Pennsylvania R. Co., supra, as in any other opinion. Decided concurrently with it was, and appearing just ahead of it in the official report is, Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315, in which the trial court, without prior resort to the Interstate Commerce Commission, was held to have jurisdiction of, and the right to proceed to immediate judgment upon, a claim for damages by a shipper against a carrier arising out of overcharges to the shipper resulting from rebates granted by the carrier to competitors of the shipper in direct violation of the carrier's published tariff and of the applicable statute. Mr. Justice Lamar wrote the prevailing opinion in each case. In the Mitchell case it was argued that remitting the shipper to the commission nullified sections 9 and 22 of the Commerce Act, 49 U.S.C.A. §§ 9, 22, allowing shippers the option to sue in the federal courts or to apply to the commission. Adverting immediately to this question, and with particular reference to Section 9, the writer of the opinion said (230 U.S. at page 257, 33 S.Ct. at page 920, 57 L.Ed. 1472):

"The claim that this conclusion nullifies § 9 is concretely answered by the fact that the court has just decided to the contrary in Pennsylvania R. Co. v. International Coal Mining Company. There the carrier insisted that a suit for damages occasioned by rebating, could not be maintained without preliminary action by the Commission. This contention was overruled, and it was held that, for doing an act prohibited by the statute, the injured party might sue the carrier without previous action by the Commission, because the courts could apply the law prohibiting a departure from the tariff to the facts of the case. But where the suit is based upon unreasonable charges or unreasonable practices, there is no law fixing what is unreasonable and therefore prohibited. In such cases the whole scope of the statute shows that it was intended that the Commission, and not the courts, should pass upon that administrative question. When such order is made, it is as though the law for that particular practice had been fixed, and the courts could then apply that order, not to one case, but to every case,—thereby giving every shipper equal rights and preserving uniformity of practice. Section 9 gives the plaintiff the option of going before the Commission or the courts for damages occasioned by a violation of the statute. But since the Commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition to his right to succeed, produce an order from the Commission that the practice or the rate was thus unreasonable, and therefore illegal and prohibited."

Keeping that distinction in view, one has little difficulty in perceiving the ground upon which in several cases the courts, led by the Supreme Court of the United States, have vindicated their right to entertain, and immediately to exercise, jurisdiction in the face of the claim of primary jurisdiction in behalf of one or another administrative board.

Thus in Williams v. Western Union Telegraph Co., D.C.Pa., 203 F. 140, cited and relied upon here by the defendant, in which the sender of a telegraph message sued for damages allegedly resulting from an error in its transmission, the defendant pleaded certain conditions of the telegram form limiting its liability for errors in unrepeated messages. These conditions, whose existence and validity were unchallenged by pleading, were held to be a complete defense to the plaintiff's claim.

In closing its opinion the court addressed its attention to a point urged by the plaintiff, only upon argument to the court and not in the pleadings, that the stipulation was unreasonable and unlawful, and observed that such a point if validly and reasonably urged would require consideration by the Interstate Commerce Commission rather than by the court. But since the point had not actually come into the case as a matter of pleading, the court did not allow it to direct or postpone its decision or oust its jurisdiction. In Great Northern Ry. Co. v. Merchants' Elevator Company, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943, the jurisdiction of the court without preliminary resort to the Interstate Commerce Commission was sustained in an action by a shipper to recover charges collected by a carrier under an interstate tariff where the rights of the parties depended upon the legal construction of the tariff, involving no question either of fact or of administrative discretion. Likewise in General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, the jurisdiction of a federal court was sustained over a case brought by a shipper against the owner of tank cars leased to the shipper on a monthly rental basis to recover from the owner, according to the terms of the leases, the excess, over the aggregate monthly rentals, of the aggregate of certain car mileage allowances collected in respect of the rented cars by the owner from sundry carrying railroads under published tariff. But, in the face of a claim made by the defendant that the recovery sought would result in an unlawful rebate, the supreme court further ruled that the trial court's appropriate course was to retain jurisdiction of the case pending submission of the validity of the practice involved to the Interstate Commerce Commission. The case is instructive in its vindication of the court's jurisdiction coupled with its postponement of any judicial deferment of action until such time in the course of the formulation and trial of the issues as the particular factors vesting primary jurisdiction in the Interstate Commerce Commission are made manifest, either by pleading or by evidence. Quite similarly, in Bodine & Clark Livestock Commission Co. v. Great Northern Ry. Co., 9 Cir., 63 F.2d 472, the district court, retaining jurisdiction, suspended its exercise pending resort to the commission, but only after the defendant had formally interposed an answer setting up certain established operating practices by a railroad in bar of the plaintiff's claim and the plaintiff had moved to strike that part of the answer as tendering no adequate defense. Louisville & Nashville R. Co. v. F. W. Cook Brewing Co., 223 U.S. 70, 32 S.Ct. 189, 56 L.Ed. 355 sustained, upon the ground that only a legal question was involved, the jurisdiction of the federal court to prevent by injunction the refusal of a railroad carrier to accept liquor for shipment into a state whose legislature had enacted an invalid measure forbidding such shipment. The supreme court in Pennsylvania R. Co. v. Puritan Coal Mining Co., 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867, sustained the jurisdiction of the Pennsylvania state court without preliminary resort to the Interstate Commerce Commission to award damages to a shipper against a carrier for failure to furnish cars for the transportation of coal, where the refusal was alleged to be, not in pursuance, but rather in disregard and violation of a rule of distribution formally promulgated by the carrier. Similar relief was sustained in Illinois Central R. Co. v. Mulberry Hill Coal Co., 238 U.S. 275, 35 S.Ct. 760, 59 L.Ed. 1306. Both of the cases last cited were examined and reaffirmed in Pennsylvania Railroad Co. v. Clark Brothers Coal Mining Co., 238 U.S. 456, 35 S.Ct. 896, 59 L.Ed. 1406, under the particular history in which, however, the jurisdiction of the state courts to award damages in respect of interstate shipments was denied, because, the plaintiff, having already sought and obtained a ruling of the Interstate Commerce Commission upon the challenged practice, was thereafter required by Section 9 of the Commerce Act to proceed either before the Commission or in a federal court. Turner Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry. Co., 271 U.S. 259, 46 S.Ct. 530, 70 L.Ed. 934, was a suit to collect from a carrier a demurrage charge exacted under an allegedly unlawful and unconstitutional

tariff. While the plaintiff failed to recover on the ground of illegality of the tariff, the jurisdiction of the court was vindicated against the contention of the carrier that preliminary recourse to the commission was required. See also Francesconi & Co. v. Baltimore & Ohio R. Co., D.C.N.Y., 274 F. 687; Empire Refineries v. Guaranty Trust Co., 8 Cir., 271 F. 668; Collins Co. v. Davis, D.C.Conn., 283 F. 837.

The plaintiff places special emphasis upon the language of Title 49 U.S.C.A. § 676, wherein the congress in the Civil Aeronautics Act expressly provided that: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." Careful consideration has been given to this provision of the Act. But it may not reasonably be regarded—nor does the plaintiff propose it—as an adequate denial in all circumstances of the validity of the primary jurisdiction rule. Essentially identical language is found in the Commerce Act. Title 49 U.S.C.A. § 22. Yet, despite it, the primary jurisdiction rule has undergone its consistent development and application. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., supra. See 204 U.S. at page 446, 27 S.Ct. at page 357, 51 L.Ed. 553, 9 Ann. Cas. 1075.[2]

■ After the study leading to the foregoing arrangement of sundry authorities, (which expressly disclaims the stature of an analysis) the court is persuaded that, at this juncture in the pending case, vide supra, there is absolutely nothing before the court which even suggests the presence of an issue that is within the statutory jurisdiction of the Interstate Commerce Commission. At one point in its brief the defendant suggests that "it is obvious that the defendant's reasons for failing to perform its scheduled flight on the date in question were related to safety in air transportation." But the suggestion is wholly without virtue and quite gratuitous, first, because there is in the petition no allegation or intimation that the flight was not performed; secondly, because, if it was not actually performed, there is no assertion in the petition of the reason for its cancellation. In fact, it is fairly inferable from the petition that the plaintiff contends that he was excluded from carriage on a flight which was regularly made as scheduled. The defendant also mentions the exclusion from the flight of the plaintiff as having been in recognition and administration of priorities allowed in favor of certain classes of passengers in the course of the prosecution of the war that was in progress at the time for which the plaintiff claims to have arranged for his passage. But no pleading yet before the court warrants the consideration of that possibility. In like manner, the defendant has drawn to the court's attention several regulations applicable at the time in question to transportation of passengers by air. But, since it has not yet answered, it has not pleaded any factual setting bringing those regulations, or any of them, to bear upon the present controversy.

If and when that is done, questions may arise which will prompt and receive from the court further study and ruling. However, they may not appropriately be anticipated now.

A single suggestion will demonstrate the necessity of an adverse ruling upon the defendant's motion.[3] What the defendant's

[2] Title 49 U.S.C.A. § 676, however, does seem convincingly to repel the argument made by the defendant in its initial brief to the effect that by Section 404(a) of the Civil Aeronautics Act, being Title 49 U.S.C.A. § 484(a), "Congress replaced the common law duty of an air carrier with a statutory duty. Defendant can not violate its duty to transport the traveling public, unless it violates section 404 (a) of the Civil Aeronautics Act." See, however, to the contrary, Pennsylvania R. Co. v. Puritan Coal Co., supra; Illinois Central R. Co. v. Mulberry Hill Coal Co., supra; and Francesconi & Co. v. Baltimore & Ohio R. Co., supra, in which the identical language of the Commerce Act was held to preserve common law rights, subject in instances where it is applicable to the operation of the primary jurisdiction rule.

[3] In fact, it undoubtedly eliminates any real necessity for the discussion that has already been offered here of the primary jurisdiction rule.

defense will be is presently beyond the court's appraisal. It may, possibly, though improbably, admit the claim and suffer the entry of judgment against it. It may wholly deny the plaintiff's purchase of a ticket and reservation of space; or admitting that, it may deny that he ever presented himself for transportation; or, admitting both of those factors, it may deny its refusal to transport him and allege his carriage to his destination; in any of which events, no question could be made of this court's jurisdiction or duty to proceed immediately to the appropriate disposition of this case. So long as any of those possibilities exist, a motion to dismiss has no conceivable validity.

With like consequence, the defendant may admit the alleged preliminary steps and assert its exclusion of the defendant as a passenger for reasons wholly unconnected with the regulation of the defendant by the Civil Aeronautics Board. Only, if and when the defendant shall justify the plaintiff's exclusion from carriage on some ground invoking the jurisdiction of the Board, or upon the presentation otherwise of such an issue even if it should occur during actual trial will this court be required to consider the abdication of its jurisdiction or the postponement of its exercise.

Brief mention should finally be made of the two cases discussed in the briefs of counsel involving the application of the primary jurisdiction rule in cases involving the transportation of passengers by airplane.

The defendant cites and urges upon this court the opinion in Adler v. Chicago & Southern Air Lines, D.C.Mo., 41 F.Supp. 366, 367. In that case a motion to dismiss the complaint was sustained on the ground that the primary jurisdiction rule necessarily resulted in the failure of the complaint to state a claim upon which relief could be granted by the district court, without preliminary resort to the Civil Aeronautics Board, where the plaintiff alleged that after he had purchased a ticket and been accepted as a passenger by airplane from Chicago to St. Louis, the defendant carrier cancelled its scheduled flight, thus compelling the plaintiff to obtain to his damage other and later transportation. In that case, despite the preliminary statement that the only facts before the court were the allegations of the complaint, and the recital of only a single act of cancellation of a flight by the defendant, the opinion later refers to "the practice of the defendant of cancelling scheduled flights" as a "practice" within the meaning of the Civil Aeronautics Act committed to the scrutiny and jurisdiction of the Civil Aeronautics Board. Whether the defendant's pursuit of such a practice was disclosed in the briefs, or otherwise in the presentation of the motion, does not appear from the opinion. But if the judicial statement of the "practice" rests alone upon the single act of cancellation averred in the complaint, it would seem to be inadequately premised. With equal validity one might predicate the practice of drunkenness on a lifetime's single alcoholic excess, of piety on a solitary prayer, or of speculation because of one venture in the stock market. A "practice" presumes more than an isolated act. It connotes either a declared policy duly embarked upon, or some measure of continuity of consistent action from which resolution upon a certain course of conduct may be deduced. See United States Shipping Board Emergency Fleet Corp. v. Levensaler, 53 App.D.C. 322, 290 F. 297; Francesconi & Co. v. Baltimore & Ohio R. Co., supra; West v. Sun Cab Co., 160 Md. 476, 154 A. 100; Wells Lamont Corp. v. Bowles, Em.App., 149 F.2d 364; State ex rel. v. Department of Public Service, 21 Wash.2d 201, 150 P.2d 709.

However, this court makes no effort essentially to distinguish the petition now before it from the complaint before the court in the Adler case as it is outlined in the earlier part of that opinion. It does not consider them to be materially different from each other and is not disposed to resort to narrow distinctions of dubious validity. And, despite the writer's great respect for any opinion of the learned judge who acted in the Adler case, this court is simply unable to agree with the conclusion reached upon the motion to dismiss in that action, so far as the facts alleged in the complaint are reflected in the opinion.

526

Jones v. Northwest Airlines, 22 Wash. 2d 863, 157 P.2d 728, 729, cites Adler v. Chicago & Southern Air Lines, supra, in support of the applicability of the primary jurisdiction rule in instances in which plaintiffs seek to bottom claims for damages upon allegedly unreasonable practices of carriers. But the Jones case involved no such situation and is really a fortification of this court's present and immediate jurisdiction. Jones sued for damages, because, after the defendant's commercial airplane carrying him on an eastbound trip had been grounded en route on account of perilous weather, the defendant denied him passage on the next eastbound plane and refused to carry him until .it should have an eastward flight with theretofore unreserved space into which he could be placed. Upon trial the plaintiff failed to recover; and on appeal the Supreme Court of Washington, after discussing the applicability of the primary jurisdiction rule in cases where the propriety of a carrier's practice is decisively involved, held that no such issue was before it, and affirmed the trial court's jurisdiction and judgment, saying in part:

"Where, however, the carrier has breached its contract of carriage by violating its own or interstate commerce commission rates, rules, regulations, or procedure, it is not necessary to refer the matter to the interstate commerce commission, because there is no technical fact to be determined. In such cases, the passenger may bring his action in either state or Federal court, without original submission to the interstate commerce commission.

"The appellant submitted his case to the trial court upon the theory that respondent had violated a regulation which was a part of the contract and that, therefore, the court had jurisdiction to determine the matter. He did not contend that his action was predicated upon the unreasonableness of some regulation, in which event the matter would have had to be determined by the civil aeronautics board before the court would have acquired jurisdiction.

"The trial court found that the respondent had not breached its contract or .violated any regulation that was binding upon it. This we affirm."

Persuaded, therefore, that, at least thus far in the instant case, no issue is involved over which primary jurisdiction is by law committed to the Civil Aeronautics Board, the court holds that it has jurisdiction of the action and that no reason yet exists for the suspension of its exercise of that jurisdiction. The defendant's motion is, therefore, being denied and overruled. It need not be observed that this ruling is without prejudice to the right of either party hereafter to tender the question of the primary jurisdiction of the Civil Aeronautics Board over this controversy if, by subsequent pleading or otherwise, an issue shall be made which is both essential to the disposition of this suit and within the jurisdiction of the Board.

Twenty days is being allowed for the service and filing of the defendant's answer.